JOHNSON et al. v. UTAH-IDAHO CONCRETE
PIPE CO. *et al.*

No. 7483. Decided October 25, 1950. (223 P. 2d 418)

See 63 C. J. S., Municipal Corporations, Sec. 1154. Necessary that city have estimate before determining whether it is compelled to advertise, where bids exceed estimated costs, 84 A. L. R. 902. See, also, 43 Am. Jur. 775.

*LeRoy B. Young*, Ogden, *Asa Bullen*, Logan, for respondents-cross-appellants.

*George H. Lowe*, Ogden, *George D. Preston*, Logan, for appellant-cross-respondent.

*H. A. Sjostrom, Newell G. Daines*, Logan, for defendants-respondent.

WADE, Justice.

This suit was brought by Henry B. Johnson and Rush C. Budge, on behalf of themselves and all other taxpayers of Logan City, Utah, to declare null and void an award and contract given to the Utah-Idaho Concrete Pipe Company by Logan City to replace a culinary water supply pipe line in Logan Canyon. From a judgment sustaining the award and contract but limiting the amount to be paid thereunder to the preliminary estimate of cost made by the city engineer, the Utah-Idaho Concrete Pipe Co. appeals. We shall hereinafter refer to the plaintiffs in the suit below as the respondents and the Utah-Idaho Pipe Co. as the appellant.

The facts are not in dispute. Early in 1949, Logan City determined that it would be necessary to make improvements in its water supply system. It contemplated (a) an additional reservoir for Logan City Culinary Water supply, (b) a replacement section of a portion of the hydroplant water supply line for the Logan City Power Plant, and (c) a replacement of the upper section of the culinary water supply pipe line in Logan Canyon. The contract awarded for this last item is the subject matter of this suit. Items (a) and (b) are not being questioned here.

The commissioners of Logan City having arrived at the conclusion that the above improvements were necessary, and it being apparent that a bond issue would have to be floated to pay for these, requested the city engineer to make an estimate of the costs of such improvements. The city engineer after a hasty survey of the situation estimated the cost of item (c) would be $257,000.00. The commission then passed an ordinance calling for a special election to submit to the voters the question of incurring a bonded indebtedness to pay for all the proposed improvements. At the special election held in pursuance to this

ordinance the vote was favorable for the incurring of such expenditures. The commission then employed a firm of private civil engineers who furnished the commission with plans and specifications for the proposed improvements, whereupon the city advertised for bids, requiring that a separate bid be made for the culinary water supply system. Five bids for this system were received. On July 6, the same day on which the bids were opened, the civil engineering firm employed by the city, filed its estimate of the cost of construction of the culinary water line with the City Recorder of Logan City.

The bids were evaluated on a formula based on the annual cost to the city, using the sinking fund method, which cost was determined by computing the annual amount necessary to replace the improvement at the end of its economic life, the determination of the annual amount was based on the price stated in the proposal and the computation of an annual interest charge on this price. The sum of the sinking fund and interest was assumed to be the annual cost. The life of the various materials recommended to be used in the project were given the following rating for the purpose of determining the length of time such materials would be used before replacement would be necessary: Cast Iron, 100 years; Centrifugal Concrete, 100 years; Asbestos Cement, 100 years; and Steel, 50 years. After the bids submitted had been evaluated on the above formula, the commission had two bids which it had to consider seriously before the awarding of the contract. One was by the Utah-Idaho Concrete Pipe Company in the amount of $266,347.60, proposing to use centrifugal concrete pipe and the other by A. H. Palmer and Sons, in the amount of $233,228.50, using steel and evaluated under this formula as being $266,041.00. The commission decided that it would be more advantageous to use centrifugal concrete pipe and awarded the contract to the Utah-Idaho Concrete Pipe Co. The Palmer bid had failed to comply with a

specification that the work be completed within 180 calendar days. Its bid stated that the work would be completed in 400 days. The Palmer Co. informed some of the commissioners that this was an error due to a misunderstanding by them of the specifications and offered to amend their bid to read 180 calendar days. This the commission refused to allow them to do, although a mistake in the amount of about a thousand dollars in the bid of the Utah-Idaho Concrete Pipe Co. on an item was allowed to be amended.

Almost immediately upon the awarding of the contract to it, the Utah-Idaho Concrete Pipe Co. commenced work on the project and expended considerable sums of money on it before this suit was commenced in the latter part of July, 1949.

Respondents' complaint alleged that the contract had been awarded fraudulently, arbritrarily and in bad faith, and that although the engineer's estimate for the performance of the work called for in Item (c) was $257,000, and the bid accepted was in excess of this sum, the commission did not reject all bids and advertise anew. The court found that the city engineer had estimated the cost of Item (c) as $257,000 and that the city had been authorized at the special election to create a bonded indebtedness for the improvements sought in conformity with the estimates; that defendants Logan City and its officers did not act fraudlently or in bad faith, nor were they guilty of arbitrary or capricious action in awarding the contract to appellant, and appellant had in good faith already commenced to work on the project and had expended considerable sums on it; that the civil engineering firm employed by the city had filed a revised estimate of costs which raised the estimated costs over and above any of the bids submitted, but that this revised estimate was not filed in time for inspection by any of the bidders and taxpayers. It concluded from these facts that Logan City and its officers had failed to comply with the provisions of

Sec. 15—7—20, U. C. A. 1943, when it awarded the contract to appellant because all bids received by it were in excess of the estimated cost of the proposed improvement, which was $257,000 and not the purported revised estimate which was filed too late for consideration by any persons. However, in view of the fact that the work on the project had already been started in good faith by appellant and since Palmer & Sons, the only other bidder, could not perform the work in the time required, the court was of the opinion that the equity of the situation required that the contract should not be declared void in toto, but that it should be modified so as to provide that the full price should not exceed the price of the estimate, to-wit, $257,000.00.

Appellant contends that the court erred in decreeing a modification of the contract and in concluding that the estimate filed by the city engineer was the only estimate upon which the city could act in conforming with the law and the estimate filed by the civil engineers could not have been considered by the city because it was filed too late to be properly considered by any persons. The respondents in their cross appeal claim the court erred in finding that only two bids were made for the project in question here, and in concluding that the contract awarded was not totally void.

The evidence was uncontradicted that there were five bids entered for the work outlined in Item (c) and the court therefore erred in finding that there were only two bids. However, that error is not important. The determinative question is whether the city complied with the provisions of Sec. 15—7—20, U. C. A. 1943, which reads as follows: "Whenever the board of commissioners or city council of any city * * * shall contemplate making any new improvement to be paid for out of the general funds of the city or town, such governing body shall cause plans and specifications for, and an estimate of the cost of, such im-

provement to be made. If the estimated cost of such improvement, in the case of a city of the first class, shall be less than $6,000, or in a town or a city of the second or third class less than $2,000, such city or town may make such improvement without calling for bids for making the same. If the estimated cost of such proposed improvement shall exceed the amounts above mentioned, the city or town shall, if it shall determine to make such improvement, do so by contract, after publication of notice for at least five days in a newspaper of general circulation printed and published in such city or town; * * * *In case bids are called for as provided in this section and the proposals received shall exceed the estimate of the cost of making the improvement, all shall be rejected and the governing body shall advertise anew in the same manner as before.* If after twice advertising as herein provided no bid shall be received that is satisfactory and less than the estimated cost of such improvement, such governing body may proceed under its own direction to make the improvement." (Italics ours.)

At the time it contemplated the project, the commission requested the City Engineer to give an estimate of the probable costs. Within a few days the City Engineer informed them that he estimated the cost for the pipe line would be $257,000. The commission then being advised that the cost would exceed $2,000 knew that it would have to advertise for bids before it could award a contract. This it did after having received the plans and specifications from the firm of civil engineers it had employed for this work. This firm did not provide the commission with an estimate of the costs before the advertising for bids because it was unable for a number of months to get the prices for all the items included in the plans and specifications, and the commission was anxious to have the work on the project started as soon as possible because of an emergency condition existing in Logan City. After all

the bids were in but before any of them were opened or considered, the estimate of the costs by this firm which was more than the City Engineer's estimate of $257,000 was submitted and before the contract was awarded this estimate was thoroughly considered by the commission. From the foregoing facts it appears that the commission undertook to follow the provisions of Sec. 15—7—20, and the only question involved is the timeliness of its actions. The statute itself only provides that when the commissioners "shall *contemplate* making any new improvement" they "shall cause plans and specifications for, and an estimate of the cost of, such improvement to be made." There is no question but what the plans and specifications were timely supplied to serve their purposes, but respondents contend that the estimate upon which the commission based its award was not timely submitted because it came after the "contemplating stage" of the proceedings, and therefore the commissioners failed to follow the requirements of Sec. 15—7—20. Respondents assume by this argument that the commission does or should do, all its contemplating before it advertises for bids and therefore the estimate of the cost of such improvement must be made before that time, and that only thereafter a contract may be awarded to some bidder if the bid meets all the requirements. But there is no such express requirement in the statute. It is conceivable that a commission may deliberate anew after advertising for bids and decide not to proceed with whatever improvement they had previously contemplated making. Under such circumstances it could hardly be argued that a bidder would have a right to demand that a contract be awarded. Before an actual award of a contract is made, the commission can continue its contemplating of the desirability of making the improvement, it follows therefore that from the wording of the statute itself there is no particular limitation of the time within which an estimate of costs must be submitted to the com-

mission for its consideration, as long as it is submitted before the bids are opened.

Of course, as a practical matter, in order to comply with the provision of the statute which requires the advertising for bids if the cost of the contemplated improvement exceeds the amounts specified in the statute it is necessary that the commission have some estimate of such costs before it can determine whether it may make a contract without advertising for bids or whether it will be necessary to so advertise. However, that is not the only purpose for which it is reasonable to suppose an estimate of costs is required by the legislature. The statute provides that if all bids exceed the estimate of costs submitted to the commission that it shall reject all such bids and readvertise for further bids. This suggests that the estimate of costs is the basis upon which a contract can be awarded, but it does not suggest the time at which such estimate of costs must be submitted to the commission, other than that it must have such estimate before it for consideration before the bids are opened. This is so because it is contemplated that the commission shall have an independent estimate of the costs of the improvement by which to determine whether all bids shall be rejected or not. A very cogent reason, which readily presents itself to the mind for such a legislative requirement, is that the commission may have impartial information as to the probable costs of the contemplated improvement so that it can intelligently gauge the bids submitted and be fully advised of all the details it needs to know so as not to enter into a contract which will be ill-advised or against the best interests of the public. There is, however, nothing in the statute which suggests that the estimate must be filed in time for the public or the bidders on the contract to examine it. The payment for the improvements are to come out of the general funds, and therefore the interests of the general public are different than those of adjoining prop-

erty owners who would be assessed and taxed for the payment. In the latter case, it is readily apparent, that a property owner would have an interest in studying plans, specifications and estimates, in order to be able to protest the expenditure of sums which might appear unreasonable to him and for which his property might become subject to a lien for the payment of the improvement. In the case of bidders for a contract, there appears to be no good reason why they should see the estimate of costs before submitting a bid, in fact, it would appear to be for the best interests of the public that the bidders be not advised of the estimate so that honest and impartial bids on a competitive basis be actually submitted.

In the instant case the commission, though it received the revised estimate late, had studied and given it thorough consideration before it awarded the contract. It was fully advised as to what would be fair costs for materials and labor before awarded it the contract. Under such circumstances it complied with the mandates of the statute and the court erred in finding that the only estimate it could consider was that of the city engineer. Since this question disposes of the problem of the legality of the contract entered into between the City of Logan and appellant, it will be unnecessary to consider other errors assigned.

Remanded with instructions that the judgment of the court sustaining the award and contract be affirmed, but its judgment limiting the amount to be paid thereunder to the preliminary estimate of cost made by the city engineer is reversed, the contract to remain as originally entered into by the parties. Costs to appellant.

PRATT, C. J., and LATIMER and McDONOUGH, J.J., concur.

WOLFE, Justice.

I concur.

I call attention, however, to the fact that the first sen-

tence of section 15—7—20, U. C. A. 1943, reads: "Whenever the board of commissioners or city council of any city * * * shall contemplate making any new improvement *to be paid for out of the general funds* of the city or town, such governing body shall cause plans and specifications for, and an estimate of the cost of, such improvement to be made." (Italics added.) Here it would appear that it was contemplated that the improvement be paid for out of bonds to be sold, albeit the general funds, by the inclusion of a proper levy, might be called upon to pay these bonds, or the general funds might at some time be constituted to include money raised by a levy designed to pay for part or all of the improvements if the bonds failed in part or wholly to raise money sufficient to pay for the improvements.

In this case, the parties by their pleadings admitted the application of Section 15—7—20, and since the application of that statute results in providing a measure along which to lay the amount of the bids, it is a safeguarding provision. Being such, I am willing to accept an interpretation which applies the section rather than one which holds it inapplicable. I therefore concur.